UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

GONZALES GENARO (#516288)                                    CIVIL ACTION

VERSUS

DOCTOR TORE (TOCE), ET AL.                                   NO. 14-0418-SDD-RLB

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on July 28, 2015.

RICHARD L. BOURGEOIS, JR.
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

GONZALES GENARO (#516288)  CIVIL ACTION

VERSUS

DOCTOR TORE (TOCE), ET AL.  NO. 14-0418-SDD-RLB

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on the defendants' Motion to Dismiss (R. Doc. 10). This motion is opposed.

The *pro se* plaintiff, an inmate incarcerated at the Louisiana State Penitentiary ("LSP"), Angola, Louisiana, filed this action pursuant to 42 U.S.C. § 1983 against Dr. Paul Toce and Dr. Randy Lavespere, complaining that his constitutional rights were violated, commencing on February 5, 2014, through deliberate indifference to his serious medical needs.

In the instant motion, the defendants first seek dismissal on jurisdictional grounds, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, of the plaintiff's claim asserted against them in their official capacities for monetary damages. In this regard, the defendants are correct that § 1983 does not provide a federal forum for a litigant who seeks monetary damages against either a state or its officials acting in their official capacities, specifically because these officials are not seen to be "persons" within the meaning of § 1983. *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989). In addition, in *Hafer v. Melo*, 502 U.S. 21 (1991), the United States Supreme Court addressed the distinction between official capacity and individual capacity lawsuits and made clear that a suit against a state official in an official capacity for monetary damages is treated as a suit against the state and is

therefore barred by the Eleventh Amendment. *Id.* at 25. Accordingly, the plaintiff's claim asserted against the defendants in their official capacity for monetary damages is subject to dismissal. In contrast, the plaintiff's claim for monetary damages asserted against the defendants in their individual capacities remains viable because a claim against a state official in an individual capacity, seeking to impose personal liability for actions taken under color of state law, is not treated as a suit against the state. *Id.* at 29.

Turning to the plaintiff's claims that are not subject to dismissal on the basis of Eleventh Amendment immunity, the defendants next assert, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, that the plaintiff has failed to state a claim upon which relief may be granted. In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court clarified the standard of pleading that a plaintiff must meet in order to survive a motion to dismiss pursuant to Rule 12(b)(6). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, *supra*, at 555. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, *supra*, 556 U.S. at 678, *quoting Bell Atlantic Corp. v. Twombly*, *supra*. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* It follows that, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* at 679. "Where a Complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* at 678 (internal quotation marks omitted).

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the Complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Further, "[a] document filed *pro se* is 'to be liberally construed' ... and 'a *pro se* Complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Id.* (citation omitted). Notwithstanding, the court need not accept "a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or "naked assertions [of unlawful conduct] devoid of further factual enhancement." *Ashcroft v. Iqbal*, *supra*, 556 U.S. at 678 (internal quotation marks omitted).

In his Complaint, the plaintiff alleges that on the morning of February 5, 2014, as he was being escorted to a scheduled medical appointment at LSP, he briefly lost consciousness and fell, hitting his head on the walkway. The plaintiff asserts that he was not seen or evaluated by a physician or medical technician after the fall and was not taken to his scheduled appointment. He acknowledges, however, that defendant Dr. Toce has stated, in response to an administrative grievance filed by the plaintiff, that defendant Toce evaluated the plaintiff on that date. The plaintiff further asserts that he was not in fact seen by a physician until February 23, 2014, almost three weeks after the incident, on which date he submitted a request for medical treatment and was seen and evaluated by defendant Dr. Lavespere in response. The plaintiff alleges that defendant Lavespere examined the plaintiff on that date, prescribed medication for the plaintiff's complaints of pain, and advised the plaintiff that x-rays would be ordered for evaluation of the plaintiff's condition. The plaintiff complains, however, that the referenced x-rays were never undertaken, that he is still in pain, and that he "can not get any medical help" from the defendants for the injuries he sustained in the referenced accident.

In response to the plaintiff's allegations, the defendants assert that that they are entitled to qualified immunity in connection with the plaintiff's claims. Specifically, the defendants contend that the plaintiff has failed to allege facts sufficient to support a "reasonable inference," greater than a "mere possibility," that they have participated in any violation of the plaintiff's constitutional rights. *See Ashcroft v. Iqbal*, *supra*, 556 U.S. at 678-79.

The qualified immunity defense is a familiar one and, employing a two-step process, operates to protect public officials who are performing discretionary tasks. *Huff v. Crites*, 473 Fed. Appx. 398 (5th Cir. 2012). As enunciated in *Saucier v. Katz*, 533 U.S. 194 (2001), the first step in the analysis is to consider whether, taking the facts as alleged in the light most favorable to the plaintiff, the defendants' conduct violated the plaintiff's constitutional rights. *Id.* at 201. Second, the district court looks to whether the rights allegedly violated were clearly established at the time that the violation occurred. *Id.* This inquiry, the Court stated, is undertaken in light of the specific context of the case, not as a broad, general proposition. *Id.* The relevant, dispositive inquiry in determining whether a constitutional right was clearly established is whether it would have been clear to a reasonable state official that his conduct was unlawful in the situation which he confronted. *Id.* at 202. The assertion of the qualified immunity defense alters the summary judgment burden of proof. *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005). Once a defendant pleads qualified immunity, the burden shifts to the plaintiff, who "must rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct." *Gates v. Texas Department of Protective and Regulatory Services*, 537 F.3d 404, 419 (5th Cir. 2008), *citing Michalik v. Hermann, supra*, 422 F.3d at 262.[1]

---

1. The United States Supreme Court has held that rigid chronological adherence to the *Saucier* two-step methodology is not mandatory. *Pearson v. Callahan*, 555 U.S. 223, 236

Undertaking the qualified immunity analysis with respect to the plaintiff's claims, the Court concludes that the defendants' motion is well-taken and should be granted. Specifically, the Court concludes that the plaintiff has failed to allege facts sufficient to state a viable constitutional claim of deliberate medical indifference against the named defendants.

In order for there to be liability in connection with a claim of deliberate medical indifference, an inmate plaintiff must allege that appropriate medical care has been denied and that the denial has constituted "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Johnson v. Treen*, 759 F.2d 1236, 1237 (5th Cir. 1985). Whether the plaintiff has received the treatment or accommodation that he believes he should have is not the issue. *Estelle v. Gamble, supra*. Nor do negligence, neglect, unsuccessful treatment, or even medical malpractice, give rise to a § 1983 cause of action. *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991). Rather, "subjective recklessness as used in the criminal law" is the appropriate definition of "deliberate indifference" under the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 839-30 (1994). As stated in *Farmer*, to be liable on a claim of deliberate indifference, an official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. The deliberate indifference standard sets a very high bar: the plaintiff must be able to establish that the defendants "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001), *quoting Estelle v. Gamble, supra*. Further, a mere delay in

---

(2009). Although the *Saucier* methodology will be "often beneficial", the Court in *Pearson* leaves to the lower courts discretion as to the order in which they may wish to address the two prongs of the qualified immunity analysis. *Id.*

providing medical treatment does not amount to a constitutional violation without both deliberate indifference and a resulting substantial harm. *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).

Applying the foregoing principles, the Court concludes that the plaintiff has failed to state a claim of deliberate medical indifference on the part of the defendants named herein. Whereas he complains that he was not seen or treated by medical personnel immediately after his fall on February 5, 2014, he does not attribute this deprivation to either of the defendants. Specifically, he does not assert that either defendant was informed of his accident or injury on the referenced date or was otherwise personally aware that the plaintiff had fallen on the prison walkway and was in need of medical treatment. To the contrary, the plaintiff simply asserts that he "was not taken" to the prison infirmary after the incident and that he was not seen by a physician or medical technician at that time. In the absence of any assertion that either defendant was subjectively aware of the plaintiff's accident or injury and failed or refused to provide medical attention, the plaintiff has failed to allege facts suggesting that either defendant was deliberately indifferent to the plaintiff's serious medical needs on that date, *i.e.*, that either defendant had personal knowledge of a substantial risk of serious harm to the plaintiff's health that they consciously ignored or failed or refused to treat.[2]

---

2. A motion to dismiss brought pursuant to Rule 12(b)(6) normally tests the sufficiency of a plaintiff's well-pleaded allegations and does not include an examination of documentation or other evidence, *see Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2000). However, the Court may consider documents attached to a plaintiff's Complaint, *id.,* documents subsequently filed by a *pro se* plaintiff, *Howard v. King*, 707 F.2d 215 (5th Cir. 1983), and "documents incorporated into the complaint by reference." *Dorsey, supra.* Accordingly, in reaching a decision in this case, the Court has considered the plaintiff's original administrative grievance, a copy of which was attached as an exhibit to his Complaint, as well as copies of medical request forms attached thereto. *See* R. Doc. 1-1. However, the Court has not relied upon other documentation contained in the plaintiff's administrative remedy proceedings, a certified copy of which was filed into the record by the defendants. *See* R. Doc. 9-1. Notwithstanding, the Court notes that the administrative record contains additional excerpts from

Moreover, although the plaintiff also asserts a complaint regarding the alleged failure of prison officials to provide him with medical attention during the days subsequent to the incident, he does not allege that he himself undertook any action to obtain such attention or that he otherwise notified either defendant of his need for treatment.[3] Specifically, he does not allege that he submitted any sick call requests or made any requests for emergency medical attention until February 23, 2014, almost three weeks after the incident, and he acknowledges that when he did submit a sick call request on that later date, he was in fact seen by defendant Dr. Lavespere. The plaintiff further concedes that he was evaluated by defendant Lavespere on February 23, 2014, and that the defendant prescribed medication for the plaintiff's symptoms and allegedly advised the plaintiff that x-rays would be ordered for him. Whereas the plaintiff complains that the x-rays were not thereafter undertaken, he offers nothing to suggest that this failure was anything more than mere negligence or inadvertence on the part of prison medical personnel that is not actionable under § 1983. In short, it does not appear that the plaintiff has provided any factual allegations suggesting that either defendant was deliberately indifferent to the plaintiff's serious medical needs. Instead, the plaintiff's allegations, accepted as true for purposes of this motion, reflect that neither defendant was in fact personally aware of any

---

the plaintiff's medical records, and these records reflect that defendant Dr. Toce did in fact evaluate the plaintiff on the date of the alleged incident, February 4, 2014, and noted no evidence of any "contact damage" to the plaintiff's body from the fall and "no signs or symptoms warrant[ing] further eval[uation or] x-rays." *See id.* at p. 18. Moreover, when the plaintiff finally submitted a sick call request for medical attention on February 23, 2014, his reported complaints were relative to "chest pain" and a "bad cough," not relative to his fall of three weeks previously. *See id.* at p. 20.

3. The Court notes that the plaintiff's original administrative grievance, *see* R. Doc. 1-2 at p. 2, appears to have been dated by him February 12, 2014. Accordingly, it is reasonable to conclude that the grievance effectively complained only regarding the alleged failure of prison personnel to provide him with medical attention for the seven-day period between the date of the incident, February 5, 2014, and the date of submission of the grievance.

medical need until the plaintiff first made a request for medical treatment on February 23, 2014, three weeks after the incident, and he was then admittedly seen and treated for his complaints on that date. Thus, if anything, it appears that the plaintiff's claim amounts to one of mere delay in the provision of medical care, not to deliberate indifference to a perceived risk of serious harm. Accordingly, the plaintiff's claim in this regard is subject to dismissal as a matter of law.

Finally, although the plaintiff's Complaint includes an assertion that he "still can not get any medical help" and that "Dr. Toce will not see [him] again or respond to [his] sick call requests," these assertions are entirely conclusory and are in fact belied by attachments to the plaintiff's Complaint. These attachments reflect that the plaintiff apparently submitted sick call requests for medical attention on March 13 and 27, 2014, and June 1, 3 and 11, 2014, and was seen and evaluated by medical personnel on those occasions.[4] Accordingly, the plaintiff's generalized complaint regarding a failure to provide him with medical treatment or attention is not sufficient to raise his claim for relief above a speculative level, and for this reason, the defendants' Motion to Dismiss should be granted.

To the extent that the plaintiff's allegations may be interpreted as seeking to invoke the supplemental jurisdiction of this court over potential state law claims, a district court may decline the exercise of supplemental jurisdiction if a plaintiff's state law claims raise novel or complex issues of state law, if the claims substantially predominate over the claims over which the district court has original jurisdiction, if the district court has dismissed all claims over which it had original jurisdiction, or for other compelling reasons. 28 U.S.C. § 1367. In the instant case, having considered the allegations of the plaintiff's Complaint and having recommended

---

4. As previously noted, the Court is authorized to consider this documentation that the plaintiff has provided as exhibits to his Complaint. *See* note 2, *supra*.

that the plaintiff's federal claims be dismissed, the Court further recommends that the exercise of supplemental jurisdiction be declined.

## RECOMMENDATION

It is recommended that Court decline the exercise of supplemental jurisdiction in connection with plaintiff's potential state law claims. It is further recommended that the defendants' Motion to Dismiss (R. Doc. 10) be granted, dismissing the plaintiff's claims asserted herein, with prejudice, and that this action be dismissed.

Signed in Baton Rouge, Louisiana, on July 28, 2015.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**